GEORGE M. BONNEY *vs*. PHILO C. BLAISDELL.

Waldo.    Opinion February 10, 1909.

*Sales.   Contracts.   Breach.   Waiver of Stipulations.   Time of Delivery.*
*"Remediable Faults."   Measure of Damages.*

The plaintiff sold to the defendant a gasolene launch, and agreed to put the
boat into commission and "have the same ready for delivery between June
first and ninth," 1906. The launch was not prepared for delivery until
sometime after June 9. On June 21, the plaintiff informed the defendant
that the launch was "ready for trial." On the day following, both parties
went out in her for a trial trip. On the trip several trivial and easily
remediable defects in the engine were disclosed. On the same day, June
22, the defendant notified the plaintiff that he would not take the launch,
assigning no reasons other than the imperfections in the engine. After-
wards the plaintiff let the launch and then sold her for less than the
defendant had agreed to pay.

*Held:* (1) If the time named for the delivery of the launch was·of the
essence of the contract, the evidence was plenary that strict performance
of this stipulation was waived by the defendant.

(2) In such case, it was the duty of the plaintiff to be prepared to deliver
the launch within a reasonable time.

(3) It must be assumed that it was, or ought to have been, fairly within the
contemplation of the parties that if trivial and easily remediable faults,
such as existed in this case, were disclosed on the trial trip, the proffer
of which the defendant had accepted, a reasonable opportunity was to be
had to cure them. Such would be an obvious purpose of a trial trip.

(4)   The refusal of the defendant to take the launch without giving the plaintiff a reasonable further time to remedy the troubles which were found, was, under the circumstances, unwarrantable, and was a breach of his contract.

(5)   The evidence does not support the defendant's claim that the plaintiff assented to a recission of the contract.

(6)   The plaintiff is entitled to recover the difference between the contract price and the fair market value of the launch at the time of the breach of the contract.

On report.   Judgment for plaintiff.

Action of assumpsit to recover damages for breach of a contract for the sale of a gasolene launch.   Plea, the general issue.

Tried at the September term, 1908, Supreme Judicial Court, Waldo County.   At the conclusion of the testimony, and by agreement of the parties, the case was reported to the Law Court for decision upon so much of the evidence as was legally admissible.

The case is stated in the opinion.

*Dunton & Morse*, for plaintiff.

*W. P. Thompson*, for defendant.

SITTING:   EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, KING, BIRD, JJ.

SAVAGE, J.   Action to recover damages for breach of contract. The case comes up on report.   By written contract dated June 1, 1906, made in pursuance to a previous oral agreement, the plaintiff agreed to sell and deliver his gasolene launch named "Naoma" to the defendant for $10,000 and the defendant's launch "Ellie," which was in the trade called worth $3,000.   The defendant agreed to pay the $10,000 and to put his yacht in commission and deliver her to the plaintiff "in Boston Harbor at the earliest possible date, and not later than June 20, wind and weather permitting."   The plaintiff further agreed "to put his vessel in commission and have same ready for delivery between June first and ninth."   The parties mutually agreed to put their boats "in as good order and condition as though they were to be used by themselves, with their full equipment and inventories on board."   The plaintiff did not put his boat in commission, and it was not prepared for delivery, until sometime

after June 9.   The defendant made a partial payment of $500.
The yacht Naoma was then in the Baker Yacht Basin in Quincy,
Mass.   June 18, for certain personal reasons, the defendant, by
letter, asked the plaintiff to release him from the contract.   In
reply the plaintiff wrote that he should expect the defendant to take
the boat as agreed, and that he should get it in order as soon as
possible.   June 21 the plaintiff wired his agent in New York that
the boat was "ready for trial."   This information was communi-
cated to the defendant, and June 22 he arrived in Boston and went
to the "Yacht Basin."   The two parties and others started to make
a trip in her.   After a little while the engine began to miss explo-
sions and finally stopped entirely.   The trouble arose from an
imperfectly adjusted clutch, and from the fact that the two forward
cylinder inlet valves were not properly ground.   The clutch had
been put in new since the last season.   The difficulty had not been
discovered until they were out on this trip.   After the engine
stopped the parties were set ashore, and on the same day the defend-
ant notified the plaintiff that he would not take the boat, and ever
afterwards persisted in the refusal.   Within a day or two the trouble
with the engine was remedied by grinding the valves and adjusting
the clutch and reverse gear, taking one man less than one day's
time.   Later the plaintiff chartered the boat for ten weeks, for which
he received $1,400, and in the following winter sold her for $8,000.

Upon these facts the plaintiff claims to recover for breach of the
contract to accept and pay for the boat.

The defense as stated in argument is three fold.   First, that the
defendant was justified in refusing to accept the boat, because of
the failure of the plaintiff to have the boat ready for delivery in
reasonably good order and condition on or before June 9th ; secondly,
that the plaintiff acceded to the recission of the contract by the
defendant; and lastly, that the plaintiff has not shown that he was
damaged.

The defendant contends, in the first place, that the time men-
tioned in the contract for the delivery of the boat was of the essence
of the contract, that he had a right to insist upon performance,
that is, having the boat ready for delivery by June 9th, and that

the failure of the plaintiff in that respect relieved him from any further responsibility. It will not be necessary to determine whether this point is well taken in law, for the evidence is plenary that the defendant waived strict performance of this part of the contract. Later than June 9 he was at the "Yacht Basin" advising about the work then being done on the yacht. In his letter of June 18 he asked to be released from the contract, and intimated a willingness to compensate the plaintiff therefor. And on June 22 he went to Quincy to try the yacht, and made no complaint that day of the delay. When he refused to take the yacht, he did so, not on the ground that she was not ready for delivery on contract time, but because, as he expressed himself in a letter to the plaintiff's New York agent, "the trial today was a complete failure." Moreover, the uncontradicted testimony of the plaintiff is that the defendant expressly assented to some delay at least.

The defendant having waived strict performance as to time, it was the duty of the plaintiff to be prepared to deliver the yacht within a reasonable time. Upon this hypothesis the defendant says he should have been prepared to deliver her on June 22nd. We do not think this follows. The plaintiff was to put the yacht in commission in good order and condition. That means that the boat and her engine and machinery were to be in a good practical, workable condition, all fitted to do their several parts well. The plaintiff had an old, imperfect clutch replaced by a new one, adjusted by an engineer sent by the concern that made the engine. The engine was then tested by running it while the yacht was tied to her mooring. It seemed to work satisfactorily. Then the plaintiff made a proffer of a "trial trip," which was accepted by the defendant. The trial trip was made June 22 and disclosed faults, but trivial, and quickly and easily remedied faults, faults that were quickly remedied by grinding two valves and adjusting a clutch and the reverse gear. Can it be said that under such conditions it was not reasonable that the plaintiff should be permitted to remedy such faults, if he did so within a reasonable time? We think not. One obvious purpose of a "trial trip," among others, is to discover if there are any faults. It is assumed that there may be. And we think it is to be assumed

that it was, or ought to have been, fairly within the contemplation of the parties that if faults were disclosed, such as existed in this case, a reasonable opportunity was to be had to cure them.

The defendant claims further that as late as June 29, the engine needed a "new and dry spark coil." The only evidence of this, however, is found in a letter written by a third party to one who had been the plaintiff's agent in the sale. It is hearsay, is not admissible, and cannot be considered. If it were otherwise, it would only show another fault, as trivial and as remediable as the others.

We conclude, therefore, that it was not unreasonable that the plaintiff be allowed reasonable further time after the "trial trip" to remedy the troubles which were found.

But the defendant, not waiting for such time to elapse, on the afternoon of June 22, sent an oral message to the plaintiff, and a letter to the plaintiff's agent, refusing to take the yacht. In his letter he said, "I am not going to wait for Mr. Bonney to get her into condition." Unless the plaintiff assented to this refusal, we think this was a breach of the contract.

Did the plaintiff assent? It appears that after failure of the "trial trip" the plaintiff and defendant had a conversation on their way in to Boston. The defendant testified that he asked him if he expected him to take the boat in the condition she was in, and that the plaintiff answered, "No." The plaintiff testified as follows: "I told Mr. Blaisdell that I was very sorry that the engine went wrong, and that I felt that it was the fault of an incompetent engineer in not putting the valves in proper order, and Mr. Blaisdell said he had left an important directors' meeting in order to try the boat, and I offered to make an allowance to him. Mr. Blaisdell said he wouldn't decide until later, that he would think the matter over." These statements are not contradictory, and we assume both to be true. But they do not show assent to a recission of the contract.

The defendant, in support of the theory of such an assent, places great stress upon the fact that the plaintiff afterwards chartered the boat to another, and then sold her. Why should he not? The

defendant had refused to take her. The boat was the plaintiff's, and he had no option but to keep her. He had a perfect right to charter or sell her. It did not concern the defendant what he did with her. The defendant had repudiated any claim he might have for her. It is elementary law that when a purchaser unjustifiably refuses to accept the thing purchased, he simply becomes liable to respond in damages. The thing remains the property of the vendor, just as if there had never been any contract of sale.

No valid defense has been shown, and the plaintiff is entitled to recover the difference between the contract price and the fair market value of the yacht, at the time of the breach, in other words, the profit of his bargain. *Bush* v. *Holmes*, 53 Maine, 417. The evidence is meager and not very satisfactory. But we think the plaintiff should have judgment for $3100 and interest from the date of the writ.

*Judgment for plaintiff accordingly.*